UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-------------------------------------------------------
TRANSPORT WORKERS UNION OF
AMERICA, LOCAL 252, AFL-CIO,

                Plaintiff,

   -against-

VEOLIA TRANSPORTATION SERVICES,
INC., d/b/a NASSAU INTER-COUNTY
EXPRESS BUS,

                Defendant.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CV-3837 (DRH)(ARL)

**A P P E A R A N C E S :**

**For the Petitioner:**
**COLLERAN, O'HARA & MILLS LLP**
100 Crossways Park Drive West, Suite 200
Woodbury, NY 11797
By:   Alicia M. Shotwell, Esq.
        Edward J. Groarke, Esq.

**For the Respondent:**
**MCMAHON BERGER, PC**
2730 N. Ballas Road, Suite 200
Saint Louis, MO 63131
By:   James N. Foster, Esq.
        Michelle Cain, Esq.

**HARRIS BEACH PLLC**
100 Wall Street, 23rd Floor
New York, NY 10005
By:   Keith Michael Corbett, Esq.

**HURLEY, Senior District Judge:**

       Transport Workers Union of America, Local 252 ("petitioner" or "Local 252" or "the

Union") commenced this action against Veolia Transportation Services, Inc. d/b/a/ NICE

Bus ("respondent" or "Veolia" or "the Company") seeking confirmation of an

1

arbitration award ("the Award") pursuant to the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185 and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and seeking the dismissal of Veolia's Counter-Petition to vacate the award. Presently before the Court are the parties' respective motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons set forth below, Local 252's motion is granted and Veolia's motion is denied.

## BACKGROUND

The following facts, drawn from the parties' Local Rule 56.1 statements and submissions, are undisputed unless otherwise noted.

*The CBA*

Local 252 represents bus operators, mechanics, and other employees of Veolia, which operates Long Island's municipal bus system. Local 252 and Veolia are parties to a Collective Bargaining Agreement ("CBA"), which governs the hours, wages, and working conditions of the Veolia employees that Local 252 represents. The CBA relevant to this litigation was in effect from January 1, 2012 and remains in effect until April 15, 2017.

The CBA makes discipline of employees represented by the Union subject to an agreed upon grievance arbitration procedure. It also provides that an "Impartial Arbitrator shall have the authority to decide all grievances and complaints but he shall not have authority to render any opinion or make any award, (i) which amends, modifies, or changes this Agreement or any of its terms; or (ii) limiting or interfering in any way with the Company's managerial responsibility to run its transit facilities safely, efficiently, and economically." (Petitioner's Ex. A, ("CBA"), Art. II, § 2(b).) Moreover, according to the CBA, "[a]fter both the Union and the Company have been given an opportunity to be heard and to submit such proof as may be

desired, the decision in writing of the Impartial Arbitrator shall be binding and conclusive upon the Company, the Union, and the employee." (*Id*. Art. II, § 2(f).)

The CBA contains the following language regarding the discipline of employees:

> The Company is committed to assuring that the dignity of each employee is respected at all times. Management shall treat employees fairly and reasonably and shall assure that employees are not disciplined without just cause, and that they are notified as expeditiously as reasonably possible, and no later than thirty (30) days of when management knew of the last occurrence of the action or inaction upon which the discipline is based, with respect to any alleged violations charged by management.

(*Id*. Art. II, § 4.)

*Grasso's Employment*

Mary Grasso ("Grasso") is a member of Local 25 and was employed by Veolia as a Bus Operator in the Rockville Centre depot. On the morning of December 11, 2012, Grasso was operating a bus route from Far Rockaway to Hempstead when the bus experienced mechanical problems. Grasso notified Veolia's command center that the bus had broken down and that she required assistance. Grasso and the bus passengers exited the bus and waited outside until assistance arrived. When the dispatcher arrived, Grasso told him that she was not able to operate the bus because her hand got cold and numb. The dispatcher then transported Grasso to Veolia's medical clinic, where she was diagnosed with bursitis. Grasso then returned to the Mitchell Field depot where she signed out as "injured-on-duty." She was then transported back to the Rockville Centre depot and returned home.

Later that day, Grasso went to work at her second, part-time job at the Levittown Union Free School District ("Levittown UFSD"). As of December 11, 2012, Grasso had been employed there for approximately two months. Her job duties included serving as a bus aide

3

or matron and observing neighborhood routes during another operator's shift, and operating a 15-passenger mini bus. Grasso did not work at Veolia or Levittown UFSD on December 12, 2012 and returned to work at Veolia on December 13, 2012.

On December 20, 2012, at Veolia's holiday party, Grasso told Aubrey Greenidge ("Greenidge"), Risk Manager of the Veolia Compensation Department, and Ray Crawford ("Crawford"), the Transportation Manager of Veolia's Rockville Centre depot, that she went to work at the Levittown UFSD on December 11, 2012. On February 19, 2013, Crawford informed Grasso that she had to meet with Veolia's former Transportation Director, Jeff Carty. On February 20, 2013, Grasso met with Carty at the Rockville Centre depot and Carty inquired about the events of December 11, 2012.

Subsequently, Grasso received an undated letter from Vincent Gabriele, Veolia's new Director of Transportation, explaining that it had "recently come to [Veolia's] attention that [Grasso's] injury-on-duty (alleged numbness) on December 11, 2012 causing [her] to be out of work for a partial day on December 11, 2012 and a full day on December 12, 2012 may have been improperly presented on [her] part." (Ex. E.) The letter further stated as follows:

> [T]his is your opportunity to tell us your side of the story. Such a statement, should you decide to provide it to us, should consist of any and all explanations, documents, memos, letters, mitigating circumstances, or anything else you feel should be considered before making a decision regarding your future employment status. Such a statement should be provided to us no later than September 20, 2013.

(*Id.*) Additionally, the letter requested that Grasso "cooperate with [Veolia] with regard to the investigation" by providing "a true copy of [her] timesheets, payroll records and/or pay stubs for the week of December 9 through December 15, 2012 while [she was] working at Levittown [UFSD]." (*Id.*) It also noted that this information was essential for Veolia to receive before

4

making a final decision regarding Grasso's future employment status. (*Id.*) The letter concluded by informing Grasso that her failure to provide such material would "be deemed to be a lack of cooperation" and "may result in discipline up to and including discharge." (*Id.*)

According to Grasso, on the day she received the aforementioned letter she retrieved her records from the Levittown UFSD. She claims that she then contacted a representative from Veolia's Human Resources Department, Diane Ialenti ("Ialenti"), and told her that she operated a "little mini van" for the Levittown UFSD on December 11, 2012. (Petitioner's Ex. C. at 63-64.) On September 18, 2013, Gabriele, Ialenti and Union Representative Jay Bucaleri met with Grasso as part of Veolia's investigation. Grasso claims that she tried to provide her records at the meeting, but Gabriele would not accept them. (*Id.* at 69-70.)

On September 23, 2013, Grasso was served with disciplinary charges for "report[ing] [her] status as injured on duty to Veolia Transportation when in fact [she] admitted when [interviewed on September 18, 2013] working a second job in a like capacity.'" (Petitioner's Ex. F.) According to the charges, Grasso's claim was "fraudulent and constitute[d] a misrepresentation of [her] correct leave status, theft of services, and conduct unbecoming of a Veolia Transportation employee." (*Id.*) The letter stated that Veolia decided to terminate Grasso.

*The Arbitration*

Grasso filed a grievance alleging that Veolia violated various Sections of the CBA between the parties, including Article II, Section 4. Her grievance was denied. As a result, Local 252 filed a "Request for Arbitration" on October 4, 2013, and on November 12, 2013, the Union filed a "Demand for Arbitration" with the American Arbitration Association ("AAA"). The dispute was assigned to Arbitrator Jack D. Tillem ("Arbitrator Tillem").

5

The arbitration hearing took place on March 6, 2014. At the outset of the hearing, "Local 252 moved to bifurcate the hearing for the purposes of obtaining a decision, in the first instance, on whether the Company's disciplinary charges against Grasso were arbitrable given that 1) the charges were filed outside of the time limits prescribed by Article II, Section 4 of the CBA and 2) the factual circumstances which formed the basis of the Company's decision to discharge Grasso were fully investigated by the Company as early as December 20, 2012, but no later than February, 2013." (Petitioner's Mem in Supp. at 8.) If Arbitrator Tillem found that the charges were timely filed, the matter would proceed on the merits as to whether there was just cause to terminate Grasso. Arbitrator Tillem granted the motion to bifurcate. After the hearing, but before Arbitrator Tillem issued his Opinion and Award, Veolia contacted Grasso regarding an offer of reinstatement. Grasso, however, rejected the offer of reinstatement.

Arbitrator Tillem published his Opinion and Award on May 21, 2014, which included a review and dismissal of Veolia's objections to bifurcation. Arbitrator Tillem then considered whether Veolia had violated Article II, Section 4. He found that Veolia had thirty days from December 20, 2012 to bring disciplinary charges against Grasso and violated Article II, Section 4 when it waited more than nine months after its initial interview with Grasso in December of 2012 to institute disciplinary charges against Grasso. Arbitrator Tillem reinstated Grasso with full back pay and benefits less collateral sources. Veolia, however, did not reinstate Grasso upon the parties' receipt of the Tillem Award. Nor did it make any back pay award. The Union then filed this action seeking confirmation of the Award.

### DISCUSSION

**I.** *Applicable Law and Legal Standards*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible." *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford,* 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. *Whether to Confirm or Vacate the Award*

Pursuant to the FAA, 9 U.S.C. § 10, a district court may vacate an award in the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

8

Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court ... and the court must grant the award unless the award is vacated, modified or corrected." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted). "[C]ourts must grant an [arbitrator's] decision great deference." *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor–Mgmt. Cooperation, Pension & Welfare Funds v. HVH Enter. Corp.*, 2014 WL 923350, at *4 (E.D.N.Y. Mar. 10, 2014) (internal quotation marks and citation omitted); *see also Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, 523 F. App'x 756, 760 (2d. Cir. 2013) (finding "the FAA requires district courts to accord significant deference to arbitrators' decisions"). The arbitrator's reasoning for an award does not require an explanation, "and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (internal quotation marks and citation omitted). Indeed, "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *Id.* at 110 (internal quotation marks and citation omitted). "Under this limited review, an arbitral award is legitimate if it draws its essence from the collective bargaining agreement and is not the arbitrator's own brand of industrial justice." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 896 (2d Cir. 1997).

Here, Local 225 argues that the Award should be vacated because the arbitrator exhibited evident partiality pursuant to § 10(2), refused to hear evidence pertinent and material to the controversy pursuant to § 10(3), and exhibited his own brand of industrial justice. The Court will address each of these arguments in turn.

  **A.**  **Evident Partiality**

The Second Circuit has stated the following with regard to the standard for proving evident partiality:

> In this Circuit, evident partiality within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. Unlike a judge, who can be disqualified in any proceeding in which his impartiality might reasonably be questioned, an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side. Proof of actual bias is not required, however. A conclusion of partiality can be inferred from objective facts inconsistent with impartiality. Of course, a showing of evident partiality may not be based simply on speculation.
>
> The burden of proving evident partiality rests upon the party asserting bias. In inquiring whether that burden has been satisfied, the court employ[s] a case-by-case approach in preference to dogmatic rigidity.

*Scandinavian Reinsurance Co. Ltd v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (internal quotation marks and citations omitted).

Here, respondent argues that Arbitrator Tillem's "statements to counsel for Veolia off the record at the arbitration hearing clearly demonstrate his partiality." (Respondent's Mem. in Supp. at 5.) James N. Foster, Jr. ("Foster"), an attorney for Veolia in this matter and at the arbitration hearing, testified in an affidavit that "[d]uring several breaks early in the arbitration hearing of March 6, 2014, before all the evidence was presented, Arbitrator Tillem repeatedly told [him] off the record that he intended to order the reinstatement of Mary Grasso, regardless of any other evidence introduced at the hearing." (Foster Aff. ¶ 15.) "While it is better in most cases for arbitrators to be chary in expressing any opinion before they reach their ultimate conclusion, and to avoid discussing settlement, it does not follow that such expressions are proof of bias." *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21 (2d Cir.

10

1962). Moreover, here, a reasonable person would not *have to* conclude based on these statements that Arbitrator Tillem was partial to the Union. Rather, one could conclude, as the Union suggests, that the statements were made in an effort to settle the matter. (Petitioner's Mem. in Opp'n at 6.) Veolia has demonstrated that the alleged statements were no more than "the arbitrator's statement of his opinion. . . ." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 106 (2d Cir. 2013) (internal quotation marks and citation omitted). Furthermore, Arbitrator Tillem's "conduct of the hearing was wholly consistent with those standards of informality and expedition appropriate to arbitration proceedings." *Ballantine Books, Inc.*, 302 F.2d at 21 (finding that arbitrator's off the record comment that there should be a ruling in favor of one party did not amount to evident partiality).

Veolia also argues that the "arbitrator's bias was . . . demonstrated by his procedural rulings during the arbitration hearing." (Respondent's Mem. in Supp. at 7.) Specifically, Veolia argues that Arbitrator Tillem "deprived [Veolia] of the opportunity to respond in writing to the Union's motion to bifurcate," "refused to permit evidence from Veolia about the merits of its termination of Grasso, most of which was also relevant to the procedural issue of the timeliness of Veolia's discipline of Grasso," and "permitted the Union to present its case first, when normally, in a discharge case, the employer presents its evidence first because it has the burden of proof on the issue of just cause." (*Id*.) As the Union points out, however, courts in this Circuit have held that "adverse rulings are not enough to establish evident partiality." *See e.g.*, *British Ins. Co. of Cayman v. Water Street Ins. Co., Ltd.*, 93 F. Supp. 2d 506, 519 (S.D.N.Y. 2000). Here, the assertion that Arbitrator Tillem's rulings could only be explained by bias against Veolia is too speculative to support vacatur of the Award. *Konkar Mar. Enters., S.A. v. Compagnie Belge D'Affretement*, 668 F. Supp. 267, 275 (S.D.N.Y. 1987)

11

("speculation [regarding evident partiality based on adverse rulings] is clearly insufficient to warrant vacatur of the award").

### B. The Arbitrator's Refusal to Hear Evidence Pertinent and Material to the Controversy

The Second Circuit has directed that "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). "[A]lthough not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Id.* (internal quotation marks and citation omitted).

*Evidence of Veolia's Unconditional Offer of Reinstatement*

Veolia argues that evidence of Veolia's unconditional offer of reinstatement was relevant to the question of whether Grasso was entitled to back pay, as "claims for back pay are cut off when an employee refuses an employer's unconditional offer to return to work." (Respondent's Mem. in Supp. at 9.) According to Arbitrator Tillem, however, "[w]hile such an offer might have probative value in a proceeding involving back pay and mitigation of damages, it ha[d] no relevance" to the proceeding, which was focused on whether the charges against Grasso were timely. (Respondent's Ex. W. ("Award") at 14.) Yet respondents contend that "[t]he Arbitrator ignored the fact that the arbitration hearing over which he presided **did** involve back pay because the Union sought full back pay for Grasso from the time of her termination to the time of her reinstatement." (Respondent's Mem. in Supp. at 13 (internal quotation marks omitted).) Moreover, they point out that the Award did direct Veolia to "restore [Grasso] to her position with full back pay and benefits." (Award at 15.)

However, the Award also stated that Arbitrator Tillem would "retain jurisdiction for a

12

period of ninety days from the date hereof for the sole purpose of resolving any disputes which may arise concerning back pay or benefits." (*Id.*) There is no dispute that Veolia requested an additional hearing before Arbitrator Tillem approximately a month after the issuance of the Award to consider the question of back pay given Grasso's refusal of Veolia's offer of employment. In response, Arbitrator Tillem noted that although he retained jurisdiction for resolving the issue of back pay, "that question hinges on when grievant returns [to work] as well as from when the date of back pay starts," and "[u]ntil those two dates are resolved[,] it is impossible to determine back pay." (Respondent's Ex. Z.) In other words, Arbitrator Tillem replied to Veolia's request that he could not address the question of back pay until they reinstated Grasso. Moreover, he recommended that "the proper jurisdiction to resolve the question of grievant's return is a judicial confirmation or vacatur of the award." (*Id.*)

From these facts, it appears that Arbitrator Tillem did not refuse to address the issue of back pay, but deferred ruling on it until a proper hearing could be held and Grasso had returned to work pursuant to the Award's directive. Moreover, it does not appear that Veolia suffered any violation of fundamental fairness from this conduct.

*Bifurcation*

As noted above, Arbitrator Tillem bifurcated the proceeding so as to first determine whether Veolia violated Article II, Section 4 of the CBA. Veolia argues that Arbitrator Tillem's bifurcation violated Article II, Section 2(b) of the CBA prohibiting the Arbitrator from rendering any opinion or making any award that amends, modifies, or changes the CBA. Moreover, it argues that Arbitrator Tillem "had no reasonable basis to refuse to hear evidence regarding the underlying reasons for Grasso's termination." (Respondent's Mem. in Supp. at 16.) Arbitrator Tillem, however, found that Article II, Section 2(b) of the CBA did not prohibit

13

him from bifurcating the proceeding.

Arbitrator Tillem's decision was not a violation of fundamental fairness. "[I]t is well settled that the obligation to determine what evidence is relevant and what is irrelevant belongs to the arbitrators, and, barring a clear showing of abuse of discretion, the court will not vacate an award." *Syscon v. Annuity Fund for Ministers, Inc.*, 1984 WL 424, at *2 (S.D.N.Y. May 30, 1984) (denying motion to vacate on grounds that "arbitrators were guilty of misconduct in bifurcating the presentation of issues in the arbitration proceedings and refusing to consider certain evidence") (quoting *Petroleum Transport, Ltd. V. Yacimientos Petroliferos Fiscales*, 419 F. Supp. 1233, 1235 (S.D.N.Y. 1976), aff'd 556 F.2d 558 (2d Cir. 1977). The Court finds no such abuse of discretion here. Moreover, the Court finds unavailing Veolia's contention that it was not permitted to present testimony about relevant documents and facts, including testimony from five witnesses who would have testified about both the timeliness question and the issue of just cause for termination, as such claim is presented without any support.[1]

### C. Whether Arbitrator Tillem Exhibited Manifest Disregard for the Law or Imposed His Own Brand of Industrial Justice

The Second Circuit has held that "as judicial gloss" on the grounds specifically laid out in the FAA, "the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks and citation omitted). "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[] is apparent." *T. Co Metals, LLC v.*

---

[1] The Union notes that at the hearing, Veolia stated that they had only one witness, Ray Crawford, the Manager of Veolia's Rockville Centre depot, and Crawford testified on Veolia's behalf. (Petitioner's Ex. C. at 116-117.)

*Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks and citations omitted). Moreover, the court should apply "a notion of manifest disregard to the terms of the agreement analogous to that employed in the context of manifest disregard of the law." *Schwartz*, 665 F.3d at 452 (internal quotation marks and citations omitted). Thus, "[i]f the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." *Id*. (internal quotation marks and citation omitted).

Here, Veolia argues that Arbitrator Tillem ignored the clear and unambiguous language of the CBA, specifically Article II, Section 4, "which states that discipline may occur within 30 days of the time 'when management knew of the last occurrence of the action or inaction upon which the discipline is based.' " (Respondent's Mem. in Supp. at 19 (quoting CBA Art II, Section 4).) Moreover, it argues that "under the plain language of the CBA, the thirty-day limitations period for discipline did not begin to run until September 16, 2013, not December 20, 2012, as the Arbitrator ruled." (*Id*. at 20.) Veolia bases its position on the evidence presented to Arbitrator Tillem showing that "Grasso's discipline was based not on her work for the Levittown School District but her misrepresentations during its initial investigation and her failure to cooperate during both investigations," and that "Veolia did not learn of Grasso's misrepresentations until September 16, 2013." (*Id*.) According to Veolia, its termination of Grasso on September 23, 2013 was thus timely pursuant to Article II, Section 4.

The Court finds this argument unavailing. Veolia has not set forth any support for its assertion that Arbitrator Tillem ignored the plain language of the CBA. Rather, what Veolia seeks is for the Court to "overrule the Arbitrator as to when the Company's thirty (30) days accrued under the CBA." (Petitioner's Mem. in Opp'n at 20). Arbitrator Tillem specifically rejected Veolia's argument, finding that Veolia became aware on December 20, 2012 that

15

Grasso worked for the Levittown UFSD on December 11 and that the thirty day time period began to run on December 20, 2012. "Courts are not empowered to reexamine the merits of an arbitration award, even though the parties to the agreement may argue that the award arises out of a misinterpretation of the contract" as "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Int'l Broth. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998) (internal quotation marks and citations omitted). Moreover, "a reviewing court is bound by . . . the arbitrator's factual findings." *Id*. at 715. As a result, the Court will not reexamine Arbitrator Tillem's findings with regard to when the thirty day time period began to run. Nor does the Court find that Arbitrator Tillem exhibited a manifest disregard for the terms of the CBA. Indeed, the Award draws its essence from the language of the CBA, as Arbitrator Tillem interpreted Article II, Section 4 of the CBA in making his determination. *Local 1199, Drug, Hosp. and Health Care Emps. Union v. Brooks Drug Co.*, 956 F.2d 22, 26 (2d Cir. 1992) (stating that the court's task "is not to review the accuracy of the arbitrator's construction of" the CBA clause, but "only [to] determine whether he arguably was interpreting" the clause).

Finally, Veolia argues that "the Arbitrator's refusal to consider the effect of Veolia's repeated unconditional offers of reinstatement on [Grasso's] potential remedy was also manifestly contrary to well-established law." (Respondent's Mem. in Supp. at 21.) In support, Veolia contends that the rule established in *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219 (1982), is well-established and applicable here. In that case, the Supreme Court held that where an employer is sued for discrimination pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." *Ford Motor Co.*, 458

16

U.S. at 241.

"A court may vacate an arbitral award [for manifest disregard of the law] only if the court finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (internal quotation marks and citations omitted). With regard to the first prong, as noted above, Arbitrator Tillem did not refuse to consider the effect of reinstatement on back pay, but rather deferred ruling on this issue until a subsequent hearing. With regard to the second prong, Veolia has not sufficiently explained how the rule stated in *Ford Motor*, announced in the context of a Title VII discrimination claim, is applicable here in an arbitration hearing brought pursuant to a collective bargaining agreement, nor does a perusal of the case disclose its relevance. Accordingly, Arbitrator Tillem did not exhibit a manifest disregard for the law.

### III.     *Attorneys' Fees*

The Union claims that it is entitled to attorneys' fees and costs. "The general rule regarding attorneys' fee awards is clear: absent express statutory authority, fees cannot be recovered by the successful party." *1199 SEIU United Healthcare Workers East v. Lily Pond Nursing Home*, 2008 WL 4443945, at *6 (S.D.N.Y. Sept. 29, 2008) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 423 U.S. 240, 247-50 (1975)). Both parties agree that there is no statutory authority providing for attorneys' fees here. However, "[p]ursuant to its inherent equitable powers . . . a court may award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Int'l Chem. Workers Union v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (internal quotation marks and citations

17

omitted). Still, "to award fees under the bad faith exception a court must find clear evidence that the losing party's claims were entirely without color and made for reasons of harassment or delay or for other improper purposes." *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (internal quotation marks and citations omitted).

The Union's request fails to meet this standard. The Union argues that it is entitled to attorneys' fees and costs because Veolia ignored the Award and refused to reinstate Grasso. However, Veolia has offered some justification for its failure to reinstate Grasso, namely that it believed Arbitrator Tillem exhibited "obvious bias" and failed to "follow the clearly-established law regarding mitigation of damages and contract interpretation." (Respondent's Mem. in Opp'n at 22.) While this argument does not provide a basis to vacate the Award, it is not clear that the argument was made in bad faith or was entirely without color. As a result, The Union's request for attorneys' fees and costs is denied.

## *CONCLUSION*

For the foregoing reasons, Petitioner's motion for summary judgment seeking confirmation of the Award is granted, and Respondent's motion for summary judgment seeking vacatur of the Award is denied. Additionally, Petitioner's request for attorneys' fees is denied. The proceeding is remanded to Arbitrator Tillem, or if he declines, the American Arbitration Association to appoint an arbitrator, to hear and determine the back pay and benefits owed to Grasso.

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2016

/s/
Denis R. Hurley
United States District Judge